UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. ) |
| ANGELICA LATTAS, DANIEL LATTAS, JULIA LATTAS AND AVA LATTAS | ) Judge ) ) |
| Defendants. | ) ) |

## COMPLAINT

The United States of America, by its attorney, Morris Pasqual, Acting United States Attorney for the Northern District of Illinois, alleges as follows:

### Jurisdiction And Venue

1. The court has jurisdiction pursuant to 18 U.S.C. § 3613 because the United States seeks recovery of property, or the value thereof, conveyed to defendants in voidable transactions to recover restitution for crimes committed in this district.

2. Venue is proper in this district under 28 U.S.C. § 1391 because the defendants reside in DuPage County and the voidable transactions underlying plaintiff's claims took place in this district.

### Parties

3. The United States of America is the plaintiff.

4. Robert Lattas was convicted of wire fraud and currently owes more than $14 million in outstanding restitution in connection with two cases for which final judgments have been entered in the Northern District of Illinois, *United States v. Lattas,* case no. 13 CR 463, and *United States v. Lattas,* case no. 14 CR 287.

1

5. Defendant Angelica Lattas (maiden name Tsamoulos) is a resident of Elmhurst, Illinois, and the former spouse of Robert.

6. Defendants Daniel Lattas, Julia Lattas and Ava Lattas reside with Angela in Elmhurst, Illinois, and are the minor children of Robert and Angela.

**Factual Background**

7. Robert was an attorney licensed to practice law in the State of Illinois from December 2001 through September 2016 with an office in Chicago, Illinois.

8. Robert and Angelica were married on May 20, 2007.

9. During the course of the marriage, Angelica was employed as a real estate broker.

10. Around May 30, 2013, Robert was indicted by a grand jury in Chicago for violating 18 U.S.C. §§1341 (wire fraud) and 1343 (mail fraud) in a scheme to defraud mortgage lenders leading to the criminal case, *United States v. Lattas*, case no. 13 CR 463.

11. Around May 15, 2014, Robert was indicted by a special grand jury for violating 18 U.S.C. § 1344 (bank fraud) and 18 U.S.C. § 1014 (making false statements to a financial institution) leading to the criminal case *United States v. Lattas*, case no. 14 CR 287.

12. Robert was tried before a jury in case no. 13 CR 463, and on October 8, 2015, the jury returned a guilty verdict on counts 1 to 5 of the indictment, which were:

 a. Count I: violation of 18 U.S.C. § 1343 with respect to a wire transfer from Gateway Capital Mortgage account at Gateway Bank of Saint Louis to a Greater Metropolitan Title account at Harris Bank to finance the purchase of a property located at 5734 South Loomis Boulevard, Chicago

  b.  Count II:  violation of 18 U.S.C § 1341 with respect to a Federal Express envelope containing a payoff check for payment relating to property located at 6243 South Racine Avenue, Chicago, Illinois

  c.  Count III:  violation of 18 U.S.C. § 1343 with respect to a wire transfer from Gateway Capital Mortgage account at Gateway Bank of Saint Louis to a Stewart Title account at Chase Bank to finance the purchase of a property located at 5527 South Marshfield Avenue, Chicago, Illinois

  d.  Count IV:  violation of 18 U.S.C. § 1343 with respect to a wire transfer from DAS Acquisition Company LLC account at Enterprise Bank and Trust to a Greater Metropolitan Title account at Lake Forest Bank to finance the purchase of a property located at 6433 South Peoria Street, Chicago, Illinois

  e.  Count V:  violation of 18 U.S.C. § 1343 with respect to a wire transfer from DAS Acquisition Company LLC account at TierOne Bank to a Greater Metropolitan Title account at Lake Forest Bank to finance the purchase of a property located at 6723 South May Street, Chicago, Illinois

  13.  Following trial, the jury returned a guilty verdict against Robert in case no. 13 CR 463.

  14.  Robert Lattas then into a plea agreement on February 5, 2016, in case no. 14 CR 287.

  15.  In his plea agreement, Robert pleaded guilty to Count I of that indictment, which charged him with bank fraud in violation of 18 U.S.C. § 1344.

  16.  Under the Mandatory Victim Restitution Act, restitution was mandatory for Robert's convictions in both cases.

17. After the guilty verdict had been pronounced in case no. 13 CR 463, and after Robert had pled guilty in case no. case no. 14 CR 287, but before he was sentenced in either case, Angelica filed a petition for dissolution of marriage in the Circuit Court of Dupage County on May 16, 2016, commencing a case captioned *In re Lattas*, case no. 2016 D 992.

18. A judgment of dissolution of marriage was entered on May 17, 2017 ("Dissolution Judgment"), a copy of which is attached as Exhibit A.

19. The Dissolution Judgment provided for a division of property between Angelica and Robert.

20. The Dissolution Judgment delineated certain property as solely belonging to Daniel, Julia, and Ava, and it marked certain property to be held in a trust for their benefit.

21. The Dissolution Judgment provided the following property to Angelica:

    a. Real estate located at 121 E. Wilson Street, Elmhurst, Illinois;

    b. Lattas Realty, LLC including any real property owned by Lattas Realty and any rental income received by Lattas Realty LLC;

    c. Robert's rights under the asset purchase agreement relating to the sale of Robert's interests in the assets of RE Law Chicago, LLC by and between Steve Felton (purchaser) and Robert as seller;

    d. Jointly titled checking account ending in 1251 at Fifth Third Bank;

    e. Proceeds of sale of 1451 W. Melrose St. minus $230,000 awarded to Robert;

    f. 60 percent of a Merrill Lynch IRA account ending in 16307;

    g. 60 percent a Merrill Lynch Roth IRA account ending in 17319;

    h. 60 percent of a Merrill Lynch RCMA account ending in 05118;

    i. 60 percent of a Merrill Lynch RCMA account ending in 05119;

      j.      2015 Infinity Q80; and

      k.      Items of furniture, art, jewelry, and other personal property in Angelica's possession.

      22.      The Dissolution Judgment also provided that Robert would indemnify Angelica and hold her harmless from any fines, restitution orders, forfeiture, penalty or liability of any nature arising from any criminal or civil proceeding naming Robert as defendant and indemnify and hold Angela harmless from all other liabilities incurred during the marriage in Robert's name.

      23.      The Dissolution Judgment also provided that Robert would pay $5,000 per month on the first of every month to Angelica for child support when the Illinois statutory guideline for child support for three children was thirty two percent of Robert's net monthly income, which amounted to about $192 per month.

      24.      In addition, Robert was to maintain at his sole expense, medical, dental, and vision insurance for the children and pay any costs of prescription, co-pays, and other expenses not covered by insurance.

      25.      Robert was also solely responsible for all childcare expenses.

      26.      Robert was also solely responsible for all educational expenses including, books, fees, costs, tutoring and Greek school.

      27.      Robert was also solely responsible for all extracurricular activity expenses for the minor children.

      28.      Daniel, Julia, and Ava were awarded the following property in the dissolution of marriage judgment, free and clear of any claims of the parties:

      a.      Bright Directions account titled in Angelica's name

      b.      AXA life insurance policy insuring the life of Daniel.

    c.      AXA life insurance policy insuring the life of Julia.

    d.      AXA life insurance policy insuring the life of Ava.

    e.      Fifth Third Bank account in Daniel's name

    f.      Fifth Third Bank account in Julia's name

    g.      Fifth Third Bank account in Ava's name

29.      The Dissolution Judgment also created a trust fund for Daniel, Julia and Ava and ordered Robert to place the following property in a Illinois Marriage and Dissolution of Marriage Act Section 5/503(g) trust for the support of Daniel, Julia and Ava:

    a.      $230,000 in proceeds from the sale of 1451 West Melrose

    b.      1456 West Fullerton, Inc / Platinum Homes Development Corp.: any and all rights of Robert pursuant to a stock purchase agreement dated January 3, 2017, and a note and mortgage dated January 3, 2017;

    c.      Defend Edge LLC

    d.      AXA Life Insurance policy 154-228-149 with Robert as insured

    e.      AXA Life Insurance policy 161-201-747 with Robert as insured

### Count I – Against Angelica Lattas for Voidable Transactions Under Federal Law

30.      Plaintiff incorporates paragraphs 1-29 as if fully stated herein.

31.      Robert's transfer of property to Angela is a voidable transaction because he did not receive reasonably equivalent value in exchange and he was insolvent at the time or became insolvent because of the transfer. 28 U.S.C. § 3304(a).

32.      Robert's transfer of property to Angela is a voidable transaction because it was done with the intent to delay and hinder the United States. 28 U.S.C. § 3304(b)(1)(A).

33. Robert's transfer of property to Angela is a voidable transaction because he did not receive reasonably equivalent value in exchange for the transfer and he intended to incur, believed, or reasonably should have believed that he would incur debts beyond his ability to pay. 28 U.S.C. § 3304(b)(1)(B).

34. Robert acknowledged in the plea agreement that he owed millions of dollars in restitution, which was mandatory for the crime he pleaded guilty to and that it would be due immediately upon entry of judgment.

35. Following the plea agreement, Robert transferred property to Angelica through the Dissolution Judgment when he knew that he was facing substantial insolvency.

36. Angelica acquired the property in the Dissolution Judgment with knowledge of the criminal proceedings.

37. Angelica acquired the property in the Dissolution Judgment with knowledge that Robert was insolvent or would become insolvent because of the transfer.

38. The details of the transfers of property are:

    a. Identification of Property: All property transferred by Robert to Angelica as set forth in the Dissolution Judgment. Exhibit A.

    b. Date of Transfer: On or around the date of entry of the Dissolution Judgment.

    c. Means of Transfer: Change of title from Robert to Angelica, or distribution of property by Robert to Angelica, as provided in the Dissolution Judgment. Exhibit A.

39. The transfer was made with the intent to hinder and delay Robert's creditors, including the United States, which had obtained a guilty verdict on counts where restitution was mandatory, and which had entered into a plea agreement with Robert where he acknowledged immediately due restitution in excess of $12 million.

40. Angelica intended to shield Robert's assets from levy by the United States and enjoy the use of the assets for herself and her children.

41. Robert transferred property in the Dissolution Judgment to Angelica with the intent to preserve assets for his family and delay the United States from enforcing restitution.

42. The United States may obtain as a remedy the avoidance of the transfers of property made by Robert to Angelica, or recover from Angelica the value of the property received by her.

43. The action is timely because it is brought within 10 years from the date the judgment was entered against Robert. 18 U.S.C. § 3613(c); 26 U.S.C. § 6502(a).

WHEREFORE, the United States requests that the court enter judgment in favor of the plaintiff, the United States of America, and against defendant Angelica Lattas avoiding the transfer of property from Robert Lattas to Angelica Lattas as stated in the Dissolution Judgment and enter judgment against Angelica Lattas for them amount of the property transferred to her.

### Count II – Against Angelica Lattas
### for Voidable Transactions Under State Law

44. Plaintiff incorporates paragraphs 1-29 and 31-37 as if fully stated herein.

45. Robert transferred property in the Dissolution Judgment to Angelica with the intent to preserve assets for his family and delay the United States from enforcing restitution.

46. Robert's transfer of property to Angela is a voidable transaction because it was done with the intent to delay and hinder the United States, and is voidable under 740 ILCS 160/5(a)(1).

47. Robert did not receive reasonably equivalent value for the transferred property and the transfer occurred when Robert was insolvent or facing insolvency, rendering the transfer voidable under 740 ILCS 160/5(b) and 740 ILCS 160/6(a).

8

48. The United States may obtain as a remedy the avoidance of the transfers of property made by Robert to Angelica, or recover from Angelica the value of the property received by her. 740 ILCS/8.

49. The action is timely because the federal government is not bound by any state statute of limitations.

WHEREFORE, the United States requests that the court enter judgment in favor of the plaintiff, the United States of America, and against defendant Angelica Lattas avoiding the transfer of property from Robert Lattas to Angelica Lattas as stated in the Dissolution Judgment and enter judgment against Angelica Lattas for them amount of the property transferred to her.

### Count III – Against Daniel, Julia, and Ava Lattas for Voidable Transactions Under Federal Law

50. Plaintiff incorporates paragraphs 1-29 as if fully stated herein.

51. Robert's transfer of property to Daniel, Julia, and Ava is a voidable transaction because he did not receive reasonably equivalent value in exchange and he was insolvent at the time or became insolvent because of the transfer. 28 U.S.C. § 3304(a).

52. Robert's transfer of property to Daniel, Julia, and Ava is a voidable transaction because it was done with the intent to delay and hinder the United States. 28 U.S.C. § 3304(b)(1)(A).

53. Robert's transfer of property to Daniel, Julia, and Ava is a voidable transaction because he did not receive reasonably equivalent value in exchange for the transfer and he intended to incur, believed, or reasonably should have believed that he would incur debts beyond his ability to pay. 28 U.S.C. § 3304(b)(1)(B).

54. Following the plea agreement, Robert transferred property to Daniel, Julia and Ava when he knew he was facing substantial insolvency.

55. The details of the transfers of property are as follows:

a. Identification of Property: All property transferred by Robert to Daniel, Julia and Ava including any property to be held in trust as set forth in the Dissolution Judgment. Exhibit A.

b. Date of Transfer: On or around the date of entry of the Dissolution Judgment or when Robert transferred his interest to Daniel, Julia and Ava in the Fifth Third bank accounts or AXA life insurance policies.

c. Means of Transfer: Change of beneficiary or ownership of accounts with Fifth Third, and insurance policies with AXA.

56. The transfer was made with the intent to hinder and delay Robert's creditors, including the United States, which had obtained a guilty verdict on counts where restitution was mandatory, and which had entered into a plea agreement with Robert where he acknowledged immediately due restitution north of $12 million.

57. Robert transferred property in the Dissolution Judgment to Daniel, Julia, and Ava with the intent to preserve assets for his family and delay the United States from enforcing restitution.

58. Robert did not receive reasonably equivalent value for the transferred property and the transfer occurred when Robert was insolvent or facing insolvency rendering the transfer voidable under 28 U.S.C. § 3304(b)(1)(B) and 28 U.S.C. § 3304(a).

59. The United States may obtain as a remedy the avoidance of the transfers of property made by Robert to Daniel, Julia, and Ava respectively or recover from Angelica the value of the property received by her.

60. The action is timely because it is brought within 10 years from the date the judgment was entered against Robert. 18 U.S.C. § 3613(c); 26 U.S.C. § 6502(a).

WHEREFORE, the United States requests that the court enter judgment in favor of the plaintiff, the United States of America, and against defendants Daniel Lattas, Julia Lattas, and Ava Lattas avoiding the transfer of property from Robert Lattas to the respective defendant as stated in the Dissolution Judgment and enter judgment against each defendant for the amount of the property transferred to each of them.

### Count IV – Against Daniel, Julia, and Ava Lattas for Voidable Transactions under State Law

61. Plaintiff incorporates paragraphs 49-53 as if fully stated herein.

62. Robert's transfer of property to Daniel, Julia, and Ava are voidable transactions because they were done with the intent to delay and hinder the United States, and are voidable under 740 ILCS 160/5(a)(1).

63. Robert did not receive reasonably equivalent value for the transferred property and the transfer occurred when Robert was insolvent or facing insolvency, rendering the transfer voidable under 740 ILCS 160/5(b) and 740 ILCS 160/6(a).

64. The United States may obtain as a remedy the avoidance of the transfers of property made by Robert to Angelica, or recover from Angelica the value of the property received by her. 740 ILCS/8. The action is timely because the federal government is not bound by any state statute of limitations.

11

WHEREFORE, the United States requests that the court enter judgment in favor of the plaintiff, the United States of America, and against defendants Daniel Lattas, Julia Lattas, and Ava Lattas avoiding the transfer of property from Robert Lattas to the respective defendant as stated in the Dissolution Judgment and enter judgment against each defendant for the amount of the property transferred to each of them.

Respectfully submitted,

MORRIS PASQUAL
Acting United States Attorney

By: s/ Devvrat Sinha
    DEVVRAT SINHA
    SCOTT D. HEFFRON
    Assistant United States Attorneys
    219 South Dearborn Street
    Chicago, Illinois 60604
    312-886-2065
    devvrat.sinha@usdoj.gov
    scott.heffron@usdoj.gov